Donahue, J.
It is contended on behalf of the plaintiff in error that the council of a municipality has no authority to fix the price at which it shall require a company to furnish electric current for power purposes, or to,make of to enter into any contract that will prevent the state from exercising its rate-making power during the time such contract is in force.
This court recently held in the case of the City of Washington v. The Public Utilities Commission of Ohio, ante, 70, that the council of a municipality has authority to fix the price of electric current for power, and were it not for the fact that this question was not necessarily controlling in that case, and that the opinion is per curiam and without syllabus, it would be wholly unnecessary to write this opinion, for the judgment in that case is decisive on this question.
While it is undoubtedly true that grants of power must be strictly construed, that the enumeration of certain powers presupposes the exclusion of all others, and that an incident to a grant does not im *425 ply a grant of power, yet these rules of construction must not be carried beyond the reason for their existence.
Section 3983, General Code, is so closely related to Section 3982, General Code, that it must be read in connection with that section as an aid in determining the intent and purpose of the general assembly of Ohio in enacting Section 3982. Section 3983 clearly contemplates the power of the municipal council to fix the price of electric current, not only for lighting purposes, but for all other legitimate purposes, for a period not exceeding ten years, when assent in writing is filed by the company in the office of the auditor or clerk of the corporation. There is no better way to determine the intent and purpose of the legislature than by its own construction of the language used. In Section 3983 the general assembly of Ohio has by the words “for other purposes” given its interpretation of the extent of the rate-making power intended to be granted to municipalities. This intent further appears from the language used in Sections 9195 and 9321, General Code, which authorize electric light companies to manufacture and supply electricity for light, heat, and power purposes, and sell the same with the consent of the municipality.
That this is no strained construction of Section 3982, General Code, is evidenced by the provisions of Section 614-2, General Code, defining an electric light company as a company “engaged in the business of supplying electricity for light, heat or power purposes to consumers within this state.”
*426 If we were to insist upon a narrow and technical definition of the word “light,” an electric light company must necessarily be defined as a company that furnishes electric current for lighting purposes only; but the general assembly by enacting Section 614-2, General Code, has expanded the ordinary meaning of the word “light,” as used in the designation “electric light company,” to include companies furnishing electricity for heat or for power, or for light, or for all or either of these.
If an electric light company means a company that furnishes current for light, or heat, or power, all of these things must have been within the contemplation of the general assembly when it enacted Sections 3982 and 3983, General Code. But, even if Section 3982 were not subject to this construction, Section 3983, independent of Section 3982 and independent of all other legislation upon this subject, authorizes a contract of this character, and provides in detail how such contracts shall be executed.
Section 3982 does not contemplate a contract. On the contrary, it grants arbitrary power to the council to fix rates from time to time, regardless of the consent of the utility; but Section 3983 provides, in terms, that when an ordinance has been passed fixing the rate for electric current for lighting the streets, or other purposes, for a definite term not exceeding ten years, and written acceptance has been filed by the company in the office of the auditor or clerk of the corporation, the power granted to council by Section 3982 shall be suspended during the term named in the ordinance.
*427 The provisions of Section 3983 are not merely incident to the power granted in Section 3982, but confer specific authority upon the council of any municipality to fix rates for a period not exceeding ten years by contract with the utility furnishing electric current for light, or for other purposes.
This is a distinct and different method than the method of fixing rates from time to time by the exercise of the arbitrary power conferred by Section 3982, regardless of the assent of the utility.
Section 614-44, General Code, specifically authorizes municipal corporations to fix by ordinance the price, rate, charge, toll, or rental, that a public utility of this character may charge, demand, exact, or collect therefor, for an ensuing period, as provided in Sections 3644, 3982 and 3983, General Code, and also provides for the filing of acceptance of such rate by the company, as provided in Section 3983, General Code; and Section 614-47 expressly provides that the utilities act shall not apply to prices fixed under authority of these sections.
This court has repeatedly held that the filing of such acceptance constitutes a contract between the municipality and the company, for the period of ten years; so that here we are dealing with -two contracts between the parties to this litigation, one in relation to the electrical current furnished to the city for lighting and power purposes, and the other for current furnished the citizens of Steubenville for the same purposes.
Even if it were conceded that the statutes of this state do not confer power upon the council of a municipality to fix arbitrarily, or by contract, the *428 rate an electric light company might charge for electric current for power purposes; nevertheless, Section 4, Article XVIII of the Constitution, as amended 1912, expressly authorizes a municipality to contract with any public utility, the product or service of which is to be supplied to the municipality or its inhabitants. While this section does not authorize the municipality to fix an arbitrary rate to be charged by a public utility for the commodity it furnishes to the municipality or its inhabitants, it does clearly authorize a contract between the municipality and the utility, and that contract would necessarily include the price to be paid for service or commodity to be furnished by the utility. Therefore, when the utility names the rate at which it is willing to furnish its product, and the city accepts that rate on its own behalf and on behalf of its inhabitants, and enters into a contract, the terms of which include the rate so agreed upon, such contract, including the agreement as to rate, clearly comes within the authority conferred upon municipalities by Section 4, Article XVIII of the Constitution of Ohio; and if there were any conflict between the provisions of the Constitution and the provisions of any statute of this state existing at the time or enacted since this constitutional amendment was adopted such statute must fall. It would therefore be idle to discuss whether there is or is not any statute in conflict with this constitutional provision, for it could avail nothing in determining the validity of these contracts.
This court having reached the conclusion that these contracts are valid and subsisting contracts *429 between the city of Steubenville and The Ohio River Power Company, it follows that the courts have jurisdiction to enforce the contracts as written.

Judgment affirmed.

Nichols, C. J., Jones, Matthias, Johnson, Wanamaker and Robinson, JJ., concur.